ZEBAH WASHBURN, *plaintiff in review, versus* WILLIAM BLAKE *and others.*

Where the cashier of a bank was employed to sell certain shares therein at a fixed price, but, before he had completed a sale, the bank was enjoined and proved insolvent, he is not responsible for the supposed value of the stock, no neglect on his part being shown in forwarding the sale.

Neither is he estopped to show the facts as to the proposed sale, although he had notified the holders that he supposed and had been informed that a sale had been effected.

Whether he may or may not have managed discreetly, as cashier, does not affect his liability in this behalf.

Although he was directed to forward the money or certificates of stock within three days, an injunction having been served on the bank on the third day, the owners of the stock were not endamaged by the certificate not being sent until several days afterwards.

ACTION OF REVIEW.   ON REPORT by RICE, J.

Zebah Washburn was cashier of the Canton Bank in China. Blake, Bigelow & Co., of Boston, held a certificate of ten shares of stock in the bank, transferred by A. Pierce, Jr., in

blank and unrecorded. The important facts in the case are fully stated in the opinion of the Court.

On Dec. 1, 1856, Blake, Bigelow & Co., commenced an action against Washburn for damages for not selling their shares as he had undertaken, and accounting for the proceeds, with various other counts. They obtained judgment, March term, 1857, for $983,40, and costs.

The present action was brought by Washburn in review, and was tried August term, 1858.

After the evidence was adduced, the case was taken from the jury, with an agreement that the presiding Judge should report the evidence, and the full Court should draw such inferences as a jury might draw, and direct a nonsuit or default as the law and facts might require.

*A. Libbey,* for the plaintiff in review, argued that Washburn, not having sold the shares, could not be held responsible for them. Neither could he be held as purchaser. To hold him as purchaser, Blake & Co. should have returned the certificate with a transfer to him, the moment they received it. But Blake & Co. were not the legal holders of the stock, as the statute forbids any transfer of stock until the whole capital is paid in, and this was never done in the case of the Canton Bank.

Neither is Washburn liable for not returning a new certificate within three days after receiving Blake & Co's letter of November 13, for, before that time elapsed, the injunction intervened.

*Williams & Cutler, contra.*

1. Washburn is estopped to deny that the shares were transferable, having officially certified that they were so at their date, April 7, 1856. 1 Greenl. Ev., § § 207, 208. Besides, the capital stock was *substantially* all paid in at that date.

2. Washburn undertook, by his letter, to sell the shares for the usual commission. There is no reason why he should not be held to his undertaking.

3. His letter of Nov. 15th shows that he had sold them. It is too late for him to deny it, after the other party had acted upon it, as appears by their letter of the 18th. 1 Greenl. Ev., §§ 207, 208. He had no authority to make a *conditional* sale, and cannot set up a condition which, in his letter of the 15th, he had suppressed.

4. Washburn's not complying with the directions in Blake & Co.'s letter of Nov. 13th, was an election to take the risk upon himself of any condition in that sale, and to account for the stock at the price named.

5. Washburn is liable under the money counts. Nov. 17, his son, and agent in the sale, wrote that he had sent the "money." Of course he had the money. In the same letter he promises to pay it " this week without fail."

The opinion of the Court was drawn up by

APPLETON, J.—The plaintiffs in the original action, Messrs. Blake, Bigelow & Co., holding a certificate of ten shares in the Canton Bank, and being desirous of selling the same, on the 15th of August, 1856, wrote to the defendant to ascertain their value, to which he replied, informing them that, whenever the stock changed hands, it was at par. The defendant having, in his letter of Aug. 25, offered his services to sell the plaintiffs' stock, they, on the 26th of August, forwarded their certificate, transferred in blank, signed A. Pierce, with a request that he would return a new certificate in their name, or a check for the largest price which he could obtain, not less than $95, per share. On September 9, the defendant wrote that he had been unable to send the check as desired, but should probably be able to do it in a few days.

On the 1st of October, the defendant in the original action ceased to be cashier, and his son, Newell Washburn, was chosen in his place.

On the 13th of November, the plaintiffs wrote the defendant, that if he could not find a purchaser within three days at $95, per share, to send them a new certificate in their name, for the certificate in blank which they had sent.

On the 15th of Nov. the defendant, in answer, wrote that his son informed him some weeks ago, that he had sent $950, for the shares, and that "they were transferred to a man in this town."

On the 17th of November, Newell Washburn writes, that he supposed it was all arranged, and that he would see they should have the money "this week without fail."

An injunction issued from the Supreme Judicial Court on the 17th of Nov. and receivers were appointed, by whom the affairs of the bank were brought to a close.

On the 21st of November, the certificates of shares belonging to the plaintiffs were forwarded to them.

It appears that, about the first of October, a conditional sale of the stock had been made by Newell Washburn to one Russell; but, the conditions not being complied with, it was not carried into effect.

It appears probable that a sale would have been effected, about the middle of November, had it not been for the intervention of the injunction issued by this Court.

The evidence satisfactorily shows that the plaintiffs' stock was never transferred, and that the defendant has received no funds for or on account of it. No neglect is shown on the part of the defendant in not effecting the sale.

The funds of the bank appear to have been wasted, and its stock to have been of but little actual value.

The plaintiffs claim to recover on the ground that a sale had been effected, and that the proceeds of the same were in the defendant's hands. But they entirely fail to support either of these allegations.

Neither is the defendant estopped to show the facts as they exist. He may have reasonably expected a sale; but, as none was effected, no reason is perceived why he should be charged. Whether he may have managed the bank discreetly, as cashier, is nothing to the present inquiry. The most he has written is that he supposed and was informed that the stock had been sold. But no estoppel was thereby created.

In the last count, the defendant is sought to be charged for having violated the instructions given on the 13th of November, which were to return the certificates if a purchaser should not be found within three days from the receipt of the letter containing them. The certificates were returned November 21st. Allowing one day for the letter of the 13th of November to reach the defendant, the certificates could not have been sent till after the injunction on the 17th of November. The plaintiffs, at most, can only complain of a delay of three or four days in the transmission of their certificates. But no rights of theirs are shown to have been impaired by this delay. The stock was equally valueless on the 13th of November, when the instructions were given, and on the 21st of November, when the certificates were forwarded.

The result is that the original plaintiffs have failed to show any cause of action.

*Judgment for the plaintiff in review.*

TENNEY, C. J., and RICE, CUTTING, MAY, and GOODENOW, JJ., concurred.